FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

99 SEP -1 AM 10:03

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARY JO PONDER, ]
]
    Plaintiff, ]
]
v. ] CV-98-N-1274-E
]
GLOBE BUSINESS FURNITURE, ]
INC., et al., ]
]
    Defendants. ]

ENTERED

SEP 01 1999

**Memorandum of Opinion**

In this products liability action, Mary Jo Ponder ("Ponder") brought suit against defendants Globe Business Furniture, Inc. ("Globe"), and Office Essentials, Inc. (Office Essentials) in the Circuit Court of Calhoun County, Alabama. Upon removal, defendants claimed jurisdiction in this court based upon diversity pursuant to 28 U.S.C. § 1332. *Notice of Removal* at ¶ 8. After removal, plaintiff sought and was granted permission to file an amended complaint to add Coe Distributors, Inc. ("Coe") as a defendant. Shortly thereafter plaintiff again sought and was granted permission to file a Second Amended Complaint adding De-Ta and DE-TA S.p.A. ("DE-TA") as defendants. Ponder's claims against DE-TA involves a violation of the Alabama Extended Manufacturer's Liability Doctrine. *Second Amended Complaint* ¶ 5.

This action is presently before the court on DE-TA's motion to dismiss for lack of *in personam* jurisdiction and motion to quash improper service of process,[1] filed February

---

[1] Proper service on DE-TA has now been perfected by the plaintiff; accordingly, the motion to quash is moot.

42

16, 1999. The parties have fully briefed the motion and they have submitted documentary and testamentary evidence in support of their respective positions. The motion is ripe for decision, and upon due consideration, is due to be denied.

## I.     **Statement of Facts.**

Plaintiff alleges that she suffered personal injuries from using Chair Model # COE 630C, Swivel Work Stool. *Complaint* at ¶¶ 4-5. She alleges that the product was defective and/or unreasonably dangerous when used for its intended purpose. *Complaint* at ¶ 5. The stool was purchased by plaintiff's employer from Office Essentials, which had purchased the stool from COE, which had in turn obtained the stool from Globe. (Wilmore depo. at 154). It is undisputed that the chair Ms. Ponder was using was originally manufactured by DE-TA and ultimately reached Alabama through a distribution chain which began in the United States with Globe.

Globe is a Tennessee Corporation with its principal place of business in Nashville, Tennessee. *Notice of Removal* at ¶ 6. Globe primarily manufactures and sells office furniture and office products. (Wilmore depo. at 17, 19). Globe's customers are large national chain stores and catalog sales companies. The company does not engage directly in retail sales. (Wilmore depo. at 21-22). Globe has business relationships with dealers and wholesalers in all fifty of the United States. (Wilmore depo. at 26, 52-53). Globe sells to dealers, wholesalers, superstores and catalog companies in Alabama, including Sam's Club and Office Depot. (Wilmore depo. at 35-36, 52-53). Office chairs constitute sixty percent of Globe's annual sales and Globe sells close to one million office chairs each year. (Wilmore dep. at 112-13). Globe and DE-TA began doing business directly in 1987

2

and prior to that time, Globe purchased DE-TA's products from a manufacturer's representative through whom DE-TA sold its products in the United States. (Wilmore depo. at 53, 67-68).

DE-TA is an Italian company with its principal place of business in Monzano, Italy. (Wilmore depo. at 55). Ninety percent of DE-TA's manufacturing output is office chairs. (Wilmore depo. at 55). In 1987, Globe and DE-TA entered into a one-page contract that gave Globe exclusive distribution rights for all of DE-TA's products in the United States. (Wilmore depo. at 61-62). This contract requires that Globe sell a minimum of three million dollars worth of DE-TA's products each year. (Wilmore depo. at 62-63). It is believed that Globe has sold three million dollars worth of DE-TA's products each year since the agreement was entered, and actually exceeded that figure most years. (Wilmore depo. at 62-63). Since 1993, Globe has sold "over a hundred thousand" of the DE-TA model 630 chairs in the United States. (Wilmore depo. at 97). Additionally, Globe required DE-TA to maintain an insurance policy for product liability claims relating to the DE-TA products Globe sells. (Wilmore depo. at 148-49, 152). The policy covers any and all sales of DE-TA chairs in any of the fifty United States in which Globe may sell a DE-TA chair. (Wilmore depo. at 153).

The model 630 chair is manufactured in Italy but is shipped to the United States in a box that contains the "Globe" logo and the notation "Made in Italy" on it. The instruction sheet inside the box, which was drafted by Globe's engineering department, contains the "Globe" name and Tennessee address printed on it. Neither the box nor the instruction

3

sheet bears the DE-TA logo or any other indication that DE-TA makes the model 630 chair. (Wilmore depo. at 100-01).

## II. Standard of Proof.

On questions of in personam jurisdiction, the plaintiff bears the initial burden of establishing a prima facie case of jurisdiction over a nonresident defendant. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). When no evidentiary hearing is held on the motion to dismiss, the plaintiff establishes its prima facie case by presenting enough evidence to defeat a motion for summary judgment. *Id.* The court must accept as true the allegations in the complaint, to the extent that they are uncontroverted by the defendant's affidavits. *Id.* When the evidence conflicts, the court must construe all reasonable inferences in favor of the plaintiff. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

## III. Discussion.

DE-TA moves the court to dismiss all claims against it arguing that DE-TA lacks sufficient minimum contacts to be subject to personal jurisdiction in Alabama. The analysis is a two-step procedure. First, the court must consider whether it has jurisdiction under the state long-arm statute. *Madara*, 916 F.2d at 1514. If a basis for personal jurisdiction exists under the forum state's long-arm statute, the federal court then must consider whether the exercise of personal jurisdiction would be consistent with federal due process requirements. *Id.* Only if both prongs of the analysis are answered in the affirmative may a federal or state court exercise personal jurisdiction over a nonresident defendant. *Id.* at 1514.

In Alabama, the reach of the state long-arm statute is equal to that allowed by the federal constitution. Ala. R. Civ. P. 4.2(a). *Morris*, 843 F.2d at 492 n.3 (citing *Alabama Power Co. v. VSL Corp.*, 448 So. 2d 327, 328 (Ala. 1984)); *Horn v. Effort Shipping Co., Ltd.*, 777 F. Supp. 927, 929 (S.D. Ala. 1991). Therefore, the two questions of the personal jurisdiction analysis merge and the only issue becomes whether a defendant has the "minimum contacts" with Alabama required by the due process clauses of the United States Constitution as interpreted in *International Shoe* and its progeny. *Horn*, 777 F. Supp. at 929. The defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 474; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Once minimum contacts have been established, the court must then ensure that "the exercise of in personam jurisdiction predicated on these contacts does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Only if both prongs of the "minimum contacts" analysis are answered in the affirmative may a federal or state court exercise personal jurisdiction over a nonresident defendant. *Madara*, 916 F.2d at 1514.

In this case, the plaintiff is suing DE-TA, Globe and other defendants for personal injuries she allegedly sustained after using the Model 630 chair. She alleges that the chair was not manufactured properly and, therefore, violated the Alabama Extended Manufacturer's Liability Doctrine. It is undisputed that DE-TA manufactured the chair in Italy and shipped it to Globe which is located in Tennessee. In support of its motion to dismiss, DE-TA contends that it does not have a place of business in the United States nor

5

any offices or facilities in Alabama, is not qualified to do business in Alabama, owns no property in Alabama, has no bank accounts nor telephone listings in Alabama, does not actively seek business in Alabama, has no agents or employees in Alabama, and does not advertise or solicit business in Alabama. In fact, DE-TA asserts that its only connection to Alabama is indirectly through its distributorship relationship with Globe. Accordingly, because DE-TA contends that it has no direct contact with Alabama, it argues that it is not subject to personal jurisdiction in Alabama. The court disagrees.

The key issue the court must determine is whether DE-TA has minimum contacts with Alabama sufficient to permit this court to exercise personal jurisdiction over the foreign company. The relevant case law makes it clear that direct contacts with the state are not always required in order to establish minimum contacts. Instead, at least under some circumstances, the flow of a product into a state on the stream of commerce will subject the manufacturer to jurisdiction in that state, even if no direct contacts have ever existed.

### A.   The "minimum contacts" test under *Asahi*

To determine if minimum contacts exist between DE-TA and Alabama, we begin our analysis with *Asahi*, the most recent Supreme Court decision that addresses the stream of commerce issue. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987). *Asahi* involved a Japanese manufacturer of valve stems (Asahi) who subsequently sold them to several tire manufacturers, including a Taiwanese company, Cheng Shin. Cheng Shin incorporated the valve stems into the finished tire, which was then sold throughout the world, including the United States. Eventually the plaintiff was injured in California due to

6

defects in a tire manufactured by Cheng Shin and he brought suit against Cheng Shin and Asahi in a California court. The plaintiff's suit was eventually settled and dismissed, and what remained was the cross-complaint filed by Cheng Shin against Asahi. The California court refused to dismiss the summons issued to Asahi concluding that Asahi's intentional act of placing the valve stems into the stream of commerce by delivering them to Cheng Shin, together with the awareness that some of the products would eventually reach California were sufficient to support the exercise of jurisdiction over Asahi. *See Asahi*, 480 U.S. at 106. The question became whether the mere awareness on the part of a foreign defendant that the components it manufactured, sold, and delivered outside the United States would reach the forum state in the stream of commerce constitutes "minimum contacts" between the defendant and the forum State such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Asahi*, 480 U.S. at 105 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945). In addressing this issue, the Court discussed at length the issue of minimum contacts. What resulted was a plurality opinion with three separate tests being advanced. Justice O'Connor's plurality opinion advanced what has been called a "stream of commerce plus" test; Justice Brennan and three other Justices concurred but advanced a pure "stream of commerce" test; and Justice Stevens also concurred but suggested a "quality of the contacts" test.

1. **"Stream of commerce plus" test.**

In an opinion authored by Justice O'Connor,[2] the plurality advanced a "stream of commerce plus" theory which expanded the requirements of the traditional stream of commerce theory by suggesting that:

> [t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi*, 480 U.S. at 112.

2. **Pure "stream of commerce" test.**

Justice Brennan and three other Jusitces[3] supported the more traditional "stream of commerce" test which lower courts had derived from *World-Wide Volkswagen*, and rejected the theory that a showing of additional conduct directed toward the forum was required to establish personal jurisdiction. *Asahi*, 480 U.S. at 117. He concluded that "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi*, 480 U.S. at 117. Justice Brennan opined that a "defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State,

---

[2] Joined by The Chief Justice, Justice Powell and Justice Scalia

[3] Joined by Justice White, Justice Marshall and Justice Blackmun

8

and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directly toward that State." *Asahi*, 480 U.S. at 117. Justice Brennan concluded that, for the above reasons, "most courts ... have found that personal jurisdiction premised on the placement of a product into the stream of commerce is consistent with the Due Process Clause, and have not required a showing of additional conduct." *Asahi*, 480 U.S. at 117.

### 3. Quality of contacts test.

Justice Stevens[4] suggested that in determining if one's conduct rises to the level of purposeful availment to establish "minimum contacts," a constitutional determination should be made regarding the nature of the defendant's contacts using such factors as the volume of the product involved, the value, and the hazardous character of the components.

### 4. An Unresolved Issue.

Although *Asahi* articulated three separate tests for evaluating the "stream of commerce" situation, none commanded the votes of a majority of the Justices. Instead, the Court majority decided *Asahi* not on the "stream of commerce" analysis, but rather, on the premise that California's exercise of personal jurisdiction over *Asahi* did not comport with traditional notions of fair play and substantial justice. *See Asahi*, 480 U.S. at 116. Moreover, because of the disagreements by the Justices and the somewhat ambiguous nature of the *Asahi* tests, the case has caused much confusion and divergence of opinions among the

---

[4] Justice Stevens was joined by Justices White and Blackmun, who also joined in Justice Brennan's analysis.

9

courts of appeals. *Compare Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415 (5th Cir. 1993)(embracing the stream of commerce theory) *and Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610 (8th Cir. 1994)(applying stream of commerce analysis); *Dehmlow v. Austin Fireworks*, 963 F.2d 941 (7th Cir. 1992)(same) *with Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671 (1st Cir. 1992)(using the stream of commerce plus test) *and Benitez-Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26 (1st Cir. 1988)(the court did not have to choose which test to use because all three tests could be met) *and Pennzoil Products Co. v. Colelli & Assoc. Inc.*, 149 F.3d 197 (3rd Cir. 1998)(court did not specifically decide which test was proper because the more stringent test could be met) *and Mott v. Schelling and Co.*, 966 F.2d 1453 (6th Cir. 1992)(applying a pure stream of commerce test but also considering other contacts) *and Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528 (6th Cir. 1993)(applying both stream of commerce and stream of commerce plus tests and finding both satisfied).

Unfortunately, *Asahi* provides no answer to the question presented here. Not surprisingly, the plaintiff suggests that the court should apply Justice Brennan's pure "stream of commerce" test while the defendant argues that the proper standard must come from the plurality's "stream of commerce plus" analysis.

**B. Post-*Asahi* cases.**

Naturally, the court begins with the relevant Eleventh Circuit cases, which consists of two post-*Asahi*[5] cases involving the "stream of commerce" dilemma. *See Morris v. SSE, Inc.*, 843 F.2d 489 (11th Cir. 1988); *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534 (11th Cir. 1993). *Morris* involved a wrongful death suit filed against SSE, an out-of-state manufacturer of parachutes and parachute equipment. The issue was whether SSE had sufficient contacts with Alabama to justify the exercise jurisdiction over SSE. SSE sells its products solely through dealers and distributors, one of which was in Alabama. *Morris*, 843 F.2d at 491. Over the two and one-half years the dealership was active in Alabama, its total sales amounted to only $450. *Morris*, 843 F.2d at 491. However, prior to the dealership agreement, SSE received some equipment from an Alabama business to repair, which it did for $123.21. *Id.* In concluding that specific personal jurisdiction over SSE was proper, the Eleventh Circuit determined that SSE's contacts with Alabama met both the stream of commerce and the stream of commerce plus tests. *Id.* at 493, 494. However, the court expressly left open the question of which test should be used.

In *Vermeulen*, a products liability case filed against a foreign manufacturer and its domestic distributor, the court was again faced with the question of whether a foreign manufacturer had sufficient contacts with the forum state. *Vermeulen*, 985 F.2d at 1537.

---

[5] Although DE-TA cites *Madara* as supporting its position regarding the stream of commerce plus theory, this court notes that while some language in *Madara* may be interpreted to favor the stream of commerce plus theory, it is not at all clear that the court is determining that stream of commerce plus is the correct theory to be applied. *See Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990). Furthermore, *Madara* is not a stream of commerce case. Accordingly, this court does not interpret *Madara* to be binding on the issue of which theory is correct in conducting a stream of commerce analysis.

11

However, based on the specific facts of the case, the court determined that the more stringent stream of commerce plus test was met, therefore there was no need to determine which standard actually controlled. *Vermeulen*, 982 F.2d at 1549. Interestingly, the court noted that "the current state of the law regarding personal jurisdiction is unsettled" but "in the absence of further guidance from the Supreme Court, several courts have declined to follow the Asahi plurality's analysis, and have instead continued to apply the 'stream of commerce' approach adopted in *World-Wide Volkswagen*." *Vermeulen*, 982 F.2d at 1549 & n.17.[8] Thus although the *Vermeulen* court elected not to state a standard, it did comment on a trend in the law governing this issue.

C.   **Return to the pre-*Asahi* days.**

After a thorough review of how the other circuits are handling this issue, this court finds the Fifth Circuit's approach most persuasive and also very much in line with the Eleventh Circuit's "comment" in *Vermeulen*. Specifically, the Fifth Circuit announced that in the years since *Asahi*, "the Fifth Circuit has continued to follow the original 'stream-of-commerce' theory established in the majority opinion of World-Wide Volkswagen, and has rejected the 'stream-of-commerce-plus' theory advocated by the *Asahi* plurality." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415 (5th Cir. 1993) (citing *Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383, 386 (5th Cir.), cert denied sub nom. *Jugometal*

---

[8] *See, e.g., Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383, 386 (5th Cir.), cert denied sub nom. *Jugometal Enters. for Import and Export of Ores and Metals v. Irving*, 493 U.S. 823, 110 S. Ct. 83, 107 L. Ed. 2d 49 (1989); *DeMoss v. City Market, Inc.*, 762 F. Supp. 913, 918 (D. Utah 1991); *Abuan v. General Electric Co.*, 735 F. Supp. 1479, 1483 (D. Guam 1990); *Curtis Management Group v. Academy of Motion Pictures Arts and Sciences*, 717 F. Supp. 1362, 1369 (S.D. Ind. 1989); *Wessinger v. Vetter Corp.*, 685 F. Supp. 769, 776-77 (D. Kan. 1987); *Hall v. Zambelli*, 669 F. Supp. 753, 756 (S.D. W.Va. 1987).

12

*Enters. for Import and Export of Ores and Metals v. Irving*, 493 U.S. 823, 110 S. Ct. 83, 107 L. Ed. 2d 49 (1989). The Fifth Circuit explained that the Supreme Court's "splintered view of minimum contacts in *Asahi* provides no clear guidance on this issue, [therefore] we continue to gauge [the nonresident defendant]'s contacts . . . by the stream of commerce standard as described in World Wide Volkswagen and embraced in this Circuit." *Ruston*, 9 F.3d at 420 (quoting *Irving*, 864 F.2d at 386).

Likewise, because the Supreme Court in *Asahi* did not clearly overrule the prior governing precedent in this circuit, this court defers, as it must, to those binding decisions until such time as they are overruled *en banc* or by the Supreme Court. *See United States v. Smith, 122 F.3d 1355* (11th Cir. 1997) (citing *Florida League of Prof'l Lobbyists, Inc. v. Meggs,* 87 F.3d 457, 462 (11th Cir. 1996)(holding that even where it has been weakened, but not overruled, by a Supreme Court decision, prior panel precedent must be followed), *cert denied,* — U.S.— , 117 S. Ct. 516, 136 L. Ed. 2d 405 (1996); *United States v. Hogan,* 986 F.2d 1364, 1369 (11th Cir. 1993)("[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court."); *see also Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 482-86, 109 S. Ct. 1917, 1921-22, 104 L. Ed. 2d 526 (1989). Because the pre-*Asahi* cases, specifically *World Wide Volkswagen,* tend to support a stream of commerce standard, and because *Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir. 1980) stands as binding circuit precedent requiring a stream of commerce analysis by the Eleventh Circuit, this court must apply the stream of commerce analysis to the present case.

13

### III. Application.

In order to satisfy the stream of commerce test, the plaintiff must merely establish that the defendant placed the product into the stream of commerce with the knowledge that the product would be used in the forum state. *See World-Wide Volkswagen*, 444 U.S. at 286; *see generally Asahi*, 480 U.S. at 1034. It is undisputed that DE-TA placed the chair into the stream of commerce; however, the defendant argues that it did not know the product was going to Alabama specifically. This present case is closely analogous to *Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir. 1980). In *Scripto*, the Fifth Circuit held that in personam jurisdiction over a Japanese manufacturer was proper because the manufacturer sold several million cigarette lighters to Scripto each year through an exclusive distributor in the United States, and one of the distributor's customers had national retail outlets. In *Scripto* the court noted that, under these circumstances, the defendant had reason to know or expect that its product could reach any of the fifty states. *Scripto*, 616 F.2d at 198. The Fifth Circuit went on to conclude that such knowledge[7] was sufficient to subject the defendant to in personam jurisdiction. *See Scripto*, 616 F.2d at 198. Accordingly, the court held that the foreign defendant "should have known that its products would reach Texas in the normal course of the distribution chain," and that under these circumstances jurisdiction could attach. *Scripto*, 616 F.2d at 202. Similarly, because Globe is a nationwide distributor for DE-TA's products, and sells DE-TA products *inter alia* to large nationwide store chains, DE-TA should have known that its products could reach any

---

[7] The court notes that in such situations it can legitimately be said that the defendant "knows" that its products may well wind up in any of the fifty states, though the name of each particular state may never be expressly mentioned or discussed.

14

of the fifty states,[8] including Alabama, thereby subjecting DE-TA to Alabama's jurisdiction. Accordingly, because DE-TA placed its products in the stream of commerce through an exclusive nationwide distributorship contract with Globe, this court finds that DE-TA has minimum contacts sufficient to satisfy the stream of commerce test.

Although the court believes, as stated above, that the proper standard to use is the stream of commerce test, it will, out of an abundance of caution, also discuss the possible application of the stream of commerce plus test. Even if this court adopted this theory, the court suspects that the record contains sufficient evidence that DE-TA purposefully directed its activities toward Alabama to support jurisdiction. In her *Asahi* opinion, Justice O'Connor suggested several other acts that may indicate the manufacturer's intent or purpose to serve the market in the forum state, including "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112. In *Kernan*, the Second Circuit, while not deciding which stream of commerce test should be used, held that an "exclusive sales rights" agreement would satisfy the more restrictive stream of commerce plus test. *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2nd Cir. 1999); *see generally*, *Adams v. Bodum Inc.*, 208 A.D.2d 450, 617 N.Y.S. 316 (N.Y. App. Div. 1994); *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610 (8th Cir. 1994). Likewise, as has already been established in the present case, an exclusive sales agreement exists governing, *inter alia*, the Alabama market.

---

[8] Indeed, DE-TA maintained insurance against liability good for any of the fifty states.

15

Moreover, in addition to the exclusive distributorship contract, DE-TA also maintained an insurance policy for products liability issues which expressly included "any person or organization ... who (which), in conjunction with the regular performance of his (its) own business activities and with the due authorization of the Insured [DE-TA] ... handles the distribution or sale in the aforementioned countries[9] of the products of the Insured ...." (*See* Wilmore Depo. exh. 23). The expansive scope of the insurance policy implies that DE-TA planned for its products to be marketed in and reach any of the fifty United States, including Alabama. This court suspects that, by way of its exclusive distributorship agreement with Globe and the products liability insurance DE-TA maintained for its products in the United States, DE-TA purposefully directed its activities at Alabama and, therefore, has sufficient minimum contacts with Alabama to satisfy the stream of commerce plus analysis. *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2nd Cir. 1999)

As a final note, this court recognizes that the present case is a different breed from *Asahi*. Unlike *Asahi*, the plaintiff in this case is not a foreign corporation seeking indemnification from another foreign corporation, but rather an Alabama citizen who seeks redress for the injuries she allegedly suffered from using DE-TA's product. "Her interest in having her case adjudicated in this country is manifest." *Vermeulen*, 985 F.2d at 1551. Second, this case involves product safety, not indemnification as did *Asahi*. Accordingly, Alabama has a compelling interest in adjudicating this dispute in order to protect the

---

[9] The aforementioned countries include the United States and Canada.

persons within its borders from unsafe products that find their way into the state. *See generally Vermeulen*, 985 F.2d at 1551; *Morris*, 843. F.2d at 495. Third, the plaintiff's evidence and witnesses relating to the accident are located primarily in Alabama. Thus, "any inconvenience caused to [defendants] by subjecting them to the jurisdiction of the Northern District of [Alabama] is overridden by the greater inconvenience of requiring a[n] [Alabama] plaintiff, injured in [Alabama] by the defendants' purposeful activity in and directed at [Alabama], to pursue [her] cause of action in a foreign forum." *Vermeulen*, 985 F.2d at 1552 (quoting *Delong Equipment Co.*, 840 F.2d at 850, 854). Thus the considerations of "fair play and substantial justice" which formed the basis of the Supreme Court's decision in *Asahi* are missing here. *See Vermeulen*, 985 F.2d at 1551.

## IV. Conclusion.

The court finds sufficient grounds for exercising *in personam* jurisdiction over defendant DE-TA in the United States District Court for the Northern District of Alabama under Alabama's long arm statute and federal due process analysis. Accordingly, DE-TA's motion to dismiss for lack of personal jurisdiction will be denied. The court will enter an appropriate order in conformity with this memorandum opinion.

Done, this 31st of August, 1999.

Edwin L. Nelson
United States District Judge